```
UNITED STATES,               )
                             )
            Plaintiff,       )
                             )
       v.                    )
                             )   No. CR—06-00487 DLJ
JAMES HUANG,                 )
                             )   **ORDER**
            Defendant.       )
_____)
```

On November 2, 2007, the Court held an evidentiary hearing regarding defendant's motion to suppress evidence. Thereafter, the parties have submitted supplemental briefs and presented arguments to the Court. George Bevan appeared on behalf of the government; Douglas Horngrad appeared for defendant. Having considered the arguments of counsel, the papers submitted, the applicable law, and the record in this case, the Court hereby denies defendant's motion to suppress evidence.

**I.  BACKGROUND**

A.   Factual Background and Procedural History

Defendants James Huang (Huang) and Lester Nhan (Nhan) are charged with violating 21 U.S.C. § 846, conspiracy to manufacture and to possess with intent to distribute marijuana, and 21 U.S.C. § 856(a)(1), use of a premises for purpose of manufacturing marijuana, and aiding and abetting in the same in violation of 18 U.S.C. § 2. The premises in question is located at 27468 Hayward Boulevard, Hayward, California.

The residence at 27468 Hayward Boulevard was associated with a series of 911 calls for the period April to July 2006 (April 22,

April 28, May 4, May 7, May 9, June 14, June 28, July 5, and July 8). The records for these calls indicate that for each call originating from that address there was only static on the line. Nonetheless, the Hayward Police were dispatched in response to each call.

On May 9, 2006, after a 911 call was received, Hayward Police Department Officers Esperson and Varela were dispatched to 27468 Hayward Boulevard. The officers arrived and knocked and banged on the door. When no response was received the officers began walking around the house in an effort to peer into the windows. The officers could not see through any windows because the house sits on a sloping hill. When the officers returned to the front of the house the garage door opened. Defendant Huang was standing in the garage.

The officers explained why they were there, and Huang told them he had not called 911. According to the police report when questioned as to whose residence it was, Huang was evasive - - first saying that it belonged to a friend and then saying that it was his residence. Esperson reports that Huang appeared nervous. The officers entered the house to conduct a protective sweep of the house and found that the house was almost empty, but nothing was amiss.

On June 14, 2006, at 12:33 p.m., the Hayward Police Department received a 911 disconnect call from (510) 881-0166. The police

dispatch log shows a 911 call with only static on the line originating from the phone number assigned to 27468 Hayward Boulevard. According to the government, because it was a busy day Officers Esperson, Nguyen, and Tong were not dispatched to the residence until 2:19 p.m. They arrived at 2:31 p.m. When they arrived at the residence Officer Tong rang the doorbell to the residence and defendant Huang answered the door.

Officer Esperson and Huang recognized one another from her prior visit to the residence. Officer Tong explained that the officers were responding to a 911 call. Huang told the officers he did not call 911 and that the residence did not have a phone line. Officer Tong reported that Huang appeared nervous when asked if anyone else was in the house. Huang said two friends were with him. Officer Tong asked where the friends were and Huang told him that his friends were in the back of the house. Officers Tong and Nguyen asked Huang for permission to enter the house to "make sure everything was okay." Huang did not consent but asked whether the police officers needed a search warrant.

The police officers told Huang that they would have to check to see if there was anyone in need of police or medical assistance. At this time defendant Nhan appeared in the foyer. Nhan was wearing latex gloves. Nhan explained that he was installing flooring.

Inside the house officers saw marijuana being grown. Mr. Huang and Mr. Nhan were then handcuffed. The residence was secured and a

3

search warrant was sought. In the later warrant request, the officers stated that they entered the house to make a protective sweep and that their basis for doing so included consideration of Huang's nervous or suspicious behavior. After entering the house the officers found an extensive marijuana grow. Huang and Nhan were formally placed under arrest.

A search warrant was issued by Hayward Superior Court Judge David Hunter at 7:35 p.m. The affidavit in support of the search warrant was prepared by Officer Esperson. Officer Esperson's affidavit included the basis for the alleged protective sweep and what had been in plain view during the protective sweep.

Officer Tong reported that 27468 Hayward Boulevard did not appear to be used as a residence. He stated that there were no signs of toiletries, bedding, or personal effects. However, photographs of 27468 Hayward Boulevard taken by law enforcement show the presence of: cookware; packages of instant soup; juice; cleaning supplies; tissues; a sofa bed, sheets for the sofa bed, a cable television guide; backscratcher; toiletries; shampoo; facial cleanser; a toothbrush and toothpaste; two drinking glasses labeled "J" and "V"; a bath towel; and some clothing.

The vast majority of the house, as demonstrated by the photos, was devoted to an extensive marijuana grow with plants in all of the bedrooms as well as in the additional rooms other than the living room and kitchen.

The Court held an evidentiary hearing on this matter on November 2, 2007. At the evidentiary hearing the government presented the testimony of Hayward Police Department Communications Supervisor Desiderio Calzada. Calzada oversees the Dispatch Center, radio communications, 911 calls, incoming communications and the dispatching of officers in response to incoming calls. Calzada testified that all 911 calls are assigned a "Priority Two". Calzada testified that a "Priority Two" call is "a call that is urgent and that we should try to get to as soon as possible." RT 30:2-4. Calzada further testified that although there was no written protocol regarding 911 calls, it was departmental practice to "endeavor to try to check every" 911 call. In his testimony, Calzada attributed the two hour time lag in responding to the June 14th call as a function of "resources and priorities" and that officers were engaged attending to other incidents. RT 32:22-33:7.

Calzada testified that the 911 dispatchers did not communicate to the responding officers that the call was a static call, or that it came from a phone known to have ongoing problems. Dispatchers did, however, make the responding officers aware of the time the call had come in.

II. Legal Standard

    A. <u>Standing</u>

A central principle of Fourth Amendment jurisprudence is that a person may "retreat into his own home and there be free from

5

unreasonable government intrusion." <u>Silverman v. United States</u>, 365 U.S. 505, 511 (1961). "The defendant has the burden of establishing that, under the totality of the circumstances, the search or seizure violated his legitimate expectation of privacy in a particular place." <u>United States v. Kovac</u>, 795 F.2d 1509, 1510 (9th Cir. 1986).

Once he has done so, the burden shifts to the prosecution to justify its failure to comply with the warrant requirement. <u>See</u> e.g., <u>United States v. Jeffers</u>, 342 U.S. 48, 51 (1951); <u>Stegald v. United States</u>, 451 U.S. 204, 212 (1981). Here, law enforcement entered 27468 Hayward Boulevard without a warrant. Once defendant has demonstrated standing, the entry must then be justified by the prosecution.

B. <u>Warrantless Entry</u>

"There are two general exceptions to the warrant requirement for home searches: exigency and emergency." <u>United States v. Martinez</u>, 406 F.3d 1160, 1164 (9th Cir. 2005). "Under the exigency doctrine, a warrantless search of a home is permitted if there is probable cause to believe that contraband or evidence of a crime will be found at the premises and that exigent circumstances exist."

The emergency exception involves entry into a residence "to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." <u>Brigham City, Utah v. Stuart</u>, 126 S.Ct. 1943, 1947 (2006).

III. Argument

    A.    <u>Does Huang Have Standing to Contest the Warrantless Entry</u>?

There is no dispute that Huang did not own the Hayward Boulevard house, or that it was his primary residence. Huang argues that for standing purposes, he is "at least equivalent to an overnight guest." Motion, p. 4. The government counters that there is insufficient evidence that Huang stayed overnight at 27468 Hayward Boulevard and that there is evidence that he came only to conduct criminal activities and so would lack standing.

While the government has adduced evidence that Huang's residence was elsewhere, Huang argues that there is sufficient evidence that he has stayed overnight on Hayward Boulevard, including the two nights prior to his arrest. Huang argues that these overnight stays are sufficient to raise a legally cognizable privacy interest. Defendant has now submitted a declaration stating that he has stayed overnight on Hayward Boulevard and also pointing out the food, toiletries and other supplies which are indicia of his overnight stays. As additional evidence to support his claim of standing defendant points out that on May 9, 2006, Officer Esperson concluded that Huang was the party responsible for the residence, noting that he had keys to the house, and that on June 14, 2006, when Huang answered the door he identified himself as a resident.

As legal support that these overnight stays are sufficient to give him standing to contest the search, he cites to <u>United States</u>

v. Gamez-Orduno, 235 F.3d 453, 456 (9th Cir. 2000). In Gamez-Orduno the defendants were transporting marijuana from Mexico via horseback. Law enforcement tracked and found the defendants and the marijuana in a trailer on a ranch. Id. The Court of Appeal held that the defendants had standing to contest the trailer search because they had been allowed to stay overnight in a trailer "for food and rest." Id. at 461. The Court rejected the district court's reasoning that a privacy interest does not exist unless the overnight stay is for a social, as opposed to commercial, purpose. Id. at 459-460. Moreover, the Court noted that the motive of the host is not relevant to standing analysis. Id. at 460. In contrast see Minnesota v. Carter, 525 U.S. 83 (1998) where defendants were sitting in an apartment with the tenant of the apartment bagging cocaine. Id. at 85-86. The Court held that there was no privacy interest because the defendants were not akin to overnight guests and were "essentially present for a business transaction and were only in the home a matter of hours." Id. at 90.

Here, Huang is, for standing purposes, at least equivalent to an overnight guest and so may contest the search.

B. Is the Entry Justified by Either the Exigency or Emergency Exceptions to the Warrant Requirement.

The government bears the burden of proof of justifying the warrantless search. Huang first argues that the government had no reasonable basis for believing that the 911 call on June 14th in fact originated from 27468 Hayward Boulevard. While the AT&T

8

telephone records for 27468 Hayward Boulevard and (510) 881-0166, state that no records were found for them for the time frame requested, the absence of records does not establish that there were no 911 calls that day.  Moreover, the police did not have access to AT&T's records; they relied on the 911 dispatch.  It was not unreasonable for them to have done so especially in light of the fact that the AT&T records comport with the 911 log for all prior calls from that location.

The defendant next argues that the totality of the circumstances viewed objectively does not justify a warrantless entry.  As noted above, the emergency exception involves entry into a residence "to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." Brigham City, Utah v. Stuart, 126 S.Ct. 1943, 1947 (2006).

In making the determination of an exception to the warrant requirement, the Court looks primarily for guidance to the recent Ninth Circuit decision in United States v. Snipe, No. 06-30215, slip. Op. 1309 (9th Cir. Jan. 28, 2008).  In Snipe, the Ninth Circuit clarified the test for an exception to warrant requirement based on exigent or emergency circumstances.  The Snipe Court affirmed its adoption of the two-prong test of Brigham City: (1) considering the totality of the circumstances, law enforcement had an objectively reasonable basis for concluding that there was an immediate need to protect others or themselves from serious harm;

9

and (2) the search's scope and manner were reasonable to meet the need. If law enforcement, while "respond[ing] to an emergency, discovers evidence of illegal activity, that evidence is admissible even if there was not probable cause to believe that such evidence would be found." 219 F.3d at 888.

The Snipe Court noted in determining reasonableness the Supreme Court has "consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry," and looked to the totality of the circumstances. Accord United States v. Banks, 540 U.S. 31, 36 (2003) ("[W]e have treated reasonableness as a function of the facts of cases so various that no template is likely to produce sounder results than examining the totality of circumstances in a given case; it is too hard to invent categories without giving short shrift to details that turn out to be important in a given instance, and without inflating marginal ones.").

Huang in essence argues three reasons why the entry was not reasonable under the circumstances. First, he asserts that the police should not have taken the 911 call seriously because there was a history of non-emergency calls to that Hayward address; (2) that the circumstances at the house did not indicate an emergency; and (3)that the police could not have considered the call an emergency because it took them two hours to respond.

Defendant argues that based on the history of calls to Hayward

Boulevard location where nothing was found amiss the police could not have believed that there was an emergency at that Hayward location on June 14th. The state of the record before the Court, however, indicates that dispatchers did not inform the responding officers about the history of calls to that number. Since it is the responding officers' reasonable belief which is being tested and not that of the dispatchers, the Court finds that facts related to past calls from that number are not relevant to the current determination. Even if the past history of calls were determinative, the Snipe Court makes it clear that the police do not have an obligation to research call histories before responding to a 911 type call.

Snipe argued that the police should have done something to verify the caller's identity or the facts at Snipe's home before entering the Snipe residence because of the possibility of prank calls. The Snipe Court noted that:

> We have previously rejected such a requirement on the grounds that it "would dramatically slow emergency response time, and would therefore be at odds with the purpose of the emergency doctrine-allow[ing] police to respond to emergency situations"in a timely manner. United States v. Russell, 436 F.3d 1086, 1092 (9th Cir.2006). Indeed, in situations like the present, where the dispatcher is prevented from verifying the caller's identity because the number that the caller called in on does not populate, indicating either it was a blocked number or a cell number, Snipe's rule might prevent the police from responding at all. We appreciate the risk of a "false positive" emergency call and recognize that a show of police force in response to a prank call is a substantial intrusion on the lives of the prank's victims. It is the nature of our own assessments of what

11

> constitutes an emergency that the police will routinely be summoned for matters that are not, in some objective sense, real emergencies. We will not impose a duty of inquiry on the police to separate a true cry for help from a less deserving call for attention because the delay may cost lives that could have been saved by an immediate police response. The possibility that immediate police action will prevent injury or death outweighs the inconvenience we suffer when the police interrupt our ordinary routines in response to what turns out to be a non-emergency call."

This language also vitiates defendant's second argument, that the circumstances at the house did not rise to the level of an emergency. As the Snipe Court notes, once the police have been summoned via a 911 call, it is incumbent on them to assure that their assistance is not truly needed. The testimony at the evidentiary hearing was that the Hayward Police have a practice of responding to all 911 calls, and the facts of this case bear that out. While there were numerous 911 calls from the number associated with the Hayward residence, the Hayward police responded to each and every one, and most of the calls were responded to quickly.

In arguing that the circumstances at the house did not demonstrate an emergency justifying entry, defendant attempts to distinguish his case from Snipe. In Snipe, the officers knew that they were responding to an emergency call by "a hysterical male." While there was no such person in the case at bar, the responding officers testified at the grand jury that Huang was evasive and nervous when law enforcement responded to 27478 Hayward Boulevard both on May 9th and again on June 14, 2006. While Huang was talking

12

to the officers at the front door, he glanced back and forth at each of the officers as he spoke, and appeared to become increasingly nervous with the officers' presence.  Huang shifted his weight from foot to foot and began breathing heavier.  The police testified that Huang's nervousness combined with his representation on June 14th that two friends were inside the house supported the reasonable inference that those persons could be in danger or needing immediate police assistance.

The Ninth Circuit in <u>Snipe</u> specifically rejected the argument that the police must witness ongoing violence before responding to an emergency.  The Ninth Circuit noted that such a requirement would conflict "not only with the purposes underlying the emergency doctrine but also with <u>Brigham City's</u> express statement that police officers do *not* have to wait for violence before acting.  126 S.Ct. at 1949 ("The role of a peace officer includes preventing violence and restoring order, not simply rendering first aid to casualties."); <u>see</u> <u>also</u> <u>United States v. Brown</u>, 64 F.3d 1083, 1086 (7th Cir.1995) (police do not need to stand outside an apartment unless they can hear screams).

Nor does the Court find defendant's argument about delay vitiating emergency circumstances dispositive.  The Court concedes that the facts of some of the cases which have allowed an emergency exception to the warrant requirement despite a delay are more compelling than those which face the Court currently.  <u>See</u> <u>U.S. v.</u>

13

1 Wiggins, 2002 WL 482334 (E.D.Va.,2002)(anonymous 911 call reporting
2 that someone shot combined with defendant's suspicious demeanor);
3 U.S. v. Boettger, 71 F.3d 1410 (8th Cir.,1995)(explosive chemicals
4 and destructive devices found in defendant's apartment following
5 explosion justified a warrantless search of defendant's apartment
6 two days after explosion); U.S. v. Lindsey, 877 F.2d 777 (9th Cir.
7 1989) (after a drug informant's arrest, requested backup officers
8 delayed); U. S. v. Jones, 635 F.2d 1357 (8th Cir. 1980)(delay of one
9 hour reasonable based on reported shots and burning smell); Foutz
10 v. City of West Valley City, 2004 WL 2700012 (D.Utah 2004)
11 (warrantless entry reasonable belief based on statements from
12 neighbors that they heard sounds of struggle and woman's scream);
13 U.S. v. De Jesus-Batres, 410 F.3d 154 (5th Cir. 2005)(finding that
14 additional aliens in garage could have been injured or sick and any
15 additional suspects could have posed a safety risk to the officers.)

However, in assessing the reasonableness of the officer's belief that the call should be treated as an emergency, the testimony at the evidentiary hearing was that this call, like all 911 calls, was given a Priority Two designation. The record indicates that almost all of the other 911 calls from the Hayward Blvd. address were responded to within minutes. This evidence demonstrates that the Hayward Police took these calls seriously and responded promptly. Supervisor Calzado testified that the day in question was a very busy day and that officers were dispatched as

14

they became available.  The Hayward Police's history of quick responses to the 911 static calls at the Hayward address both before and after the date in question supports the assertion that resources were not in fact available to respond more quickly on June 14th. Defendant argues that other officers were available to send, but such is not the state of the undisputed record before this Court. While there may have been some other officers "coming and going" from the station during the time in question, the Court has no admissible evidence in front of it as to the circumstances surrounding these officers' availability.  The Court finds based on all of the above, that under the totality of the circumstances, the officers entry into the Hayward Boulevard address meets the first prong of <u>Snipe</u>.

The second prong of the exigent circumstances test considers whether the manner and scope of the officers' entry was reasonable. Defendant does not contest the scope of the entry and in any event, the Court finds that the entry was reasonable.

### III. Conclusion

For all of the reasons stated above, the Court finds that the two-prong test set out in <u>Snipe</u> is met.  Therefore the Motion to Suppress is DENIED.

IT IS SO ORDERED

Dated:     February 8, 2008

_____
D. Lowell Jensen
United States District Judge